UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REHABCARE GROUP EAST, INC. d/b/a REHABCARE, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 15 C 10876<br>) |
| v. | ) Magistrate Judge Sidney Schenkier<br>) |
| CC CARE, LLC d/b/a COMMUNITY CARE CENTER, SH CARE, LLC d/b/a SYCAMORE HEALTH CARE, SV CARE, LLC d/b/a SOUTHVIEW MANOR, TN CARE, LLC d/b/a THE TERRACE NURSING HOME, and TM HEALTHCARE MANAGEMENT, LLC, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff, RehabCare, a business that provides therapy services to residents of long term care and skilled nursing facilities, has sued four skilled nursing facilities (the "Facility defendants") and their management company, TM Healthcare Management ("TM"). Plaintiff asserts contract claims against the various Facility defendants (doc. # 1: Compl., Counts I-II), which they have answered (doc. # 33: Amended Answer). In addition, plaintiff has asserted claims of promissory estoppel, unjust enrichment and account stated against all defendants (Compl., Counts III-VI), and a claim for tortious interference with contract solely against TM (*Id.*, Count VI).

Defendants have moved to dismiss Counts III through VI for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. # 16: Defs.' Mot. to Dismiss at 1).

---

[1]On February 1, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 22).

Plaintiff consents to the dismissal of the account stated claim in Count V solely against TM (doc. # 26: Pl.'s Resp. at 2 n.1), but in all other respects opposes the motion. The motion to dismiss has now been fully briefed. For the reasons that follow, we grant defendants' motion.

I.

In ruling on a Rule 12(b)(6) motion to dismiss, we accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *White v. Keely*, 814 F.3d 883, 887-88 (7th Cir. 2016). We set forth the relevant, well-pleaded facts below.

Each of the four Facility defendants -- CC CARE, LLC d/b/a Community Care Center ("Community Care"), SH CARE, LLC d/b/a Sycamore Healthcare ("Sycamore"), SV Care, LLC d/b/a Southview Manor ("Southview"), TN CARE, LLC d/b/a The Terrace Nursing Home ("Terrace") -- is a skilled nursing facility which entered into written agreements (the "Agreements") with RehabCare for RehabCare to provide therapy services at their locations (Compl., at ¶ 12). During the relevant time period, TM managed the Facility defendants (*Id.*, at ¶ 24).

RehabCare performed its obligations to provide services to the Facility defendants pursuant to the Agreements and submitted monthly invoices, but the Facility defendants did not pay for RehabCare's services (Compl., at ¶ 13). RehabCare made repeated demands for payment and conferred with defendants numerous times regarding the outstanding invoices and amounts past due under the Agreements (*Id.*, at ¶¶ 15-16). Plaintiff generally alleges that "Defendants" (without specifying which of them) represented to RehabCare that the outstanding invoices would be paid and requested that RehabCare continue to provide services (*Id.*, at ¶ 17).

Subsequently, RehabCare entered into separate Promissory Notes ("Notes") with three of the Facility defendants -- Sycamore, Southview and Terrace (Compl., at ¶ 18). Under the Notes,

2

RehabCare agreed to continue to provide services to them in exchange for payment (*Id.*). RehabCare alleges that "Defendants have been reimbursed by Medicare for all or a significant portion of the services provided by RehabCare, and have directly or indirectly benefitted from such reimbursement" (*Id.*, at ¶ 23). However, defendants did not pay for the services provided by RehabCare (*Id.*, at ¶ 19). RehabCare alleges that TM knew of the contracts between the Facility defendants and RehabCare, and used its management control to cause the Facility defendants to breach their contracts with RehabCare and divert funds solely for TM's gain or to harm RehabCare (*Id.*, at ¶ 24).

On November 6, 2015, RehabCare provided the Facility defendants with notices of termination of its services due to their default on the Agreements and Notes (Compl., at ¶ 20). On November 20, 2015, RehabCare ceased providing therapy services to the Facility defendants (*Id.*, at ¶ 21).

## II.

In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the basis for a claim, but must also state facts which establish that the requested relief on its face is "plausible," and not just possible. *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). While the complaint need not contain "detailed factual allegations," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* We need not "accept as true any legal assertions or recital of the elements of a cause of action supported by mere conclusory statements." *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The

3

complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support her claim. *Pierce v. Zoetis, Inc.*, -- F.3d --, 2016 WL 1015130, at *5 (7th Cir. Mar. 15, 2016) (quoting *Twombly*, 550 U.S. at 556).

### A.

We first address Count VI of the complaint, in which RehabCare asserts that TM tortiously interfered with RehabCare's contracts with the Facility defendants (Compl., at ¶ 53). Specifically, RehabCare alleges that "TM used its management control of the Facility Defendants to intentionally, maliciously and without justification, cause the Facility Defendants to breach the Therapy Services Agreements with RehabCare for TM's benefit in that TM diverted funds due RehabCare solely for its own gain and to RehabCare's detriment" (*Id.*, at ¶ 55). Defendants contend that Count VI should be dismissed for failure to state a claim because RehabCare does not allege sufficient facts to overcome the privilege Illinois accords hospital management companies from claims of tortious interference with contract (Defs.' Mot. at 2-3).

The elements of the tort of intentional interference with contract in Illinois are: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989). Illinois courts recognize a privilege that applies to hospital management companies who allegedly induce a breach of contract in the exercise of their business judgment "for the benefit of their hospitals in choosing when, and to which creditors, payments should be made to satisfy the hospitals' debts. . . . [T]he duty owed by hospital management companies to their hospitals should take precedence over their duty to the

hospitals' contract creditors." *Id.* at 677. *See also TABFG, LLC. V. Pfeil*, 746 F.3d 820, 825 (7th Cir. 2014) (explaining that the business judgment rule forms the basis for the conditional privilege that Illinois grants managers and corporate officers; so long as "the interests of corporate officers, directors, and shareholders are sufficiently aligned with those of the company, they generally cannot be liable in tort when they interfere with the company's contract for the benefit of the company"). As RehabCare has sued TM in its capacity as the hospital management company for the Facility defendants, this privilege applies to TM.

However, this privilege to interfere with contracts is conditional, and does not apply if "the defendant's conduct was unjustified or malicious," or "totally unrelated or even antagonistic to the interest which gave rise to defendant's privilege." *HPI*, 545 N.E.2d at 677. "The term 'malicious,' in the context of interference with contractual relations cases, simply means that the interference must have been intentional and without justification." *Id.* at 678. A hospital management company would not be justified in inducing a breach of contract if it acted "solely for the management company's gain, or solely for the purpose of harming the plaintiff, since such conduct would not have been done to further the hospital's interests." *Id. See also TABFG*, 746 F.3d at 825 ("corporate officers are not justified in acting solely for their own benefit or solely in order to injure the plaintiff because such conduct is contrary to the best interests of the corporation"). "[I]t is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious." *HPI*, 545 N.E.2d at 677.[2]

---

[2]Although the parties do not contest the pleading requirements, we note that the Seventh Circuit has suggested, *in dicta*, that *Roy v. Coyne*, 630 N.E.2d 1024, 1033 (Ill. App. 1994), that "Illinois courts have been unclear about whether the issue of conditional privilege is part of the plaintiff's claim—that is, an aspect of the plaintiff's burden to prove that the defendant's interference with his contract was unjustified—or an affirmative defense to be proved by the defendant." *Nation v. Am. Capital, Ltd.*, 682 F.3d 648, 652 n.2 (7th Cir. 2012). In *Roy*, however, the court held that the plaintiff *does* need to plead that the defendant acted unjustifiably where the complaint establishes the existence of a privilege. It is only if the complaint "may not fairly be said to introduce the existence of a recognized statutory or common law privilege" that the plaintiff need not plead lack of justification. *Roy*, 630 N.E.2d at 1033. *See Serv. By Air, Inc. v. Phoenix Cartage & Air Freight, LLC*, 78 F. Supp. 3d 852, n.2

5

RehabCare alleges that TM caused the Facility defendants to breach the Agreements "intentionally, maliciously and without justification . . . for TM's benefit in that TM diverted funds due RehabCare solely for its own gain and to RehabCare's detriment" (Compl., at ¶ 55). Defendants describe this paragraph as "a conclusory and speculative allegation" which does not adequately plead that their conduct was unjustified or malicious (Defs.' Mot. at 3-4). We agree.

RehabCare does not plead any factual content to allow the court to draw a reasonable inference that TM committed the alleged conduct with malice or without justification. Although "[m]alice, intent, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), the complaint must still sufficiently plead malice or intent in order to give effective notice to the defendant of the plaintiff's reasons for believing that malice or intent was present. *Alexander v. United States*, 721 F.3d 418, 423-24 (7th Cir. 2013). *See also Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 1000-01 (7th Cir. 2014) ("vague allegations that a corporation acted with reckless disregard . . . simply by virtue of its size, sophistication, or reach do not clear even this lower pleading threshold"). Just "saying the magic words is not enough: [the plaintiff] must offer 'further factual enhancement.'" *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769, 775 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

Here, RehabCare does little more than recite the "magic words." RehabCare alleges that TM caused the Facility defendants to breach their contracts "intentionally, maliciously and without justification" and "solely for its own gain and to RehabCare's detriment" (Compl., at ¶ 55). These allegations are not entitled to the assumption of truth we give well-pleaded factual

---

(N.D. Ill. 2015) (finding no inconsistency between *Roy* and *HPI*). Since *Roy*, Illinois appellate courts have reaffirmed the holding in *HPI* that the plaintiff must plead that the defendant to whom the privilege applies acted maliciously or without justification. *See Simmons v. Campion*, 991 N.E.2d 924, 930-31 (Ill. App. 2013) (in action for interference with contract, "if a defendant's conduct is privileged, the plaintiff carries the burden of pleading and proving that the conduct was malicious"); *see also Cress v. Recreation Servs., Inc.*, 795 N.E.2d 817, 842-43 (Ill. App. 2003). Here, RehabCare's complaint is fairly read as introducing the existence of the recognized common law privilege of hospital management companies from a claim of tortious interference with contract.

allegations because they amount to "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 680-81. Merely pleading the legal elements of the claim RehabCare asserts "contribute nothing to the plausibility analysis under *Twombly/Iqbal*." *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011).

Indeed, in *Iqbal*, the Supreme Court dismissed the plaintiff's claim for purposeful and unlawful discrimination because the plaintiff's allegations of intent and malice were "bare assertions" that "amount[ed] to nothing more than a 'formulaic recitation of the elements.'" *Iqbal*, 556 U.S. at 680-81 (quoting *Twombly*, 550 U.S. at 555). In *Iqbal*, the plaintiff had used language similar to RehabCare in this case, alleging that the defendants "knew of, condoned, and willfully and maliciously agreed to subject [him] to harsh conditions." *Id.* The Supreme Court held that this allegation was too conclusory to support the plaintiff's claim. *Id.* At least one court in this district has applied *Iqbal* in dismissing a claim against a hospital management company where the plaintiff failed to sufficiently plead malice or intent. *See Baniak Pine & Gannon, LLC v. NeoMedia Techs., Inc.*, No. 11 C 1157, 2011 WL 2669243, at *3 (N.D. Ill. July 6, 2011) (dismissing claim against the defendant where the plaintiffs failed to allege sufficient facts to demonstrate that the defendant acted maliciously, used any illegal means to induce a breach of contract, acted with the intent to harm the plaintiffs, or was motivated solely for its personal benefit).

Contrary to RehabCare's argument, two other lawsuits it has brought against hospital management companies do not show that RehabCare has adequately pleaded in this case that TM's behavior was unjustified or malicious. In one case cited by RehabCare, *RehabCare Grp. E., Inc. v. Certified Health Mgmt., Inc.*, No. 07 C 2923, 2007 WL 3334500, at *5 (N.D. Ill. Nov. 8, 2007), the district court judge denied the hospital management company's motion to dismiss

RehabCare's tortious interference with contract claim because despite failing to "sufficiently allege malice, [RehabCare] may nevertheless be able to prevail if it can establish that CHM was acting solely for its own gain . . . ." However, that decision was issued before the Supreme Court decision in *Iqbal*, and thus does not persuade us -- over the precedent cited above -- to find the pleading in this case adequate to plead lack of justification or malice.

In the second case -- *RehabCare Grp. E., Inc. v. SAK Mgmt. Servs., LLC*, No. 09 C 4523, 2010 WL 3307084, at *1 (N.D. Ill. Aug. 18, 2010) -- the district court judge applied the notice pleading standards set forth in *Iqbal* when it denied the hospital management company's motion to dismiss RehabCare's claim for intentional interference with contract. However, in that case, RehabCare had "gone past conclusional allegations (*e.g.*, 'the defendant's actions were unjust'), and stated facts that support this element of the claim." *Id.* at *6-7. RehabCare had "elaborate[d]" on its general allegations that the hospital management company's behavior was unjust or malicious, with specific allegations that the hospital management company withheld funds paid by Medicare and that the management company had engaged in additional improper behavior, including commingling funds and sharing assets with the facility defendants, directing the payment of insider debts before third-party creditors, and intentionally undercapitalizing the business in which they were engaged. *Id.* at *5-6. By contrast, in this case, RehabCare has done little more than "say . . . the magic words," *Charleston*, 741 F.3d at 775, without "further factual enhancement," *Iqbal*, 556 U.S. at 678. This is not sufficient to sustain plaintiff's claim of tortious interference with contract.

Accordingly, we grant defendants' motion to dismiss Count VI of RehabCare's complaint.

**B.**

We next address Counts III and IV of the complaint, which RehabCare asserts "in the alternative" to its breach of contract claims. In Count III, the promissory estoppel claim, RehabCare generally alleges that defendants made promises to RehabCare for the purpose of inducing it to continue providing services to defendants, that RehabCare reasonably relied on those promises, and that this resulted in damages to RehabCare (Compl., at ¶¶ 37-39). In Count IV, the unjust enrichment claim, RehabCare pleads that "Defendants have knowingly and willingly received, or will receive, reimbursement by Medicare, directly or indirectly, for services provided by RehabCare, and have wrongfully and intentionally withheld or will withhold such amounts from RehabCare" (*Id.*, at ¶ 44). We address first the viability of these counts with respect to the Facility defendants, and then with respect to TM.

**1.**

Defendants contend that Counts III and IV should be dismissed as to the Facility defendants because plaintiff may not plead an alternative unjust enrichment or promissory estoppel claim since an express contract exists between the Facility defendants and RehabCare (Defs.' Mot. at 7). In its response brief, RehabCare contends that it properly pleaded its promissory estoppel and unjust enrichment claims in the alternative, but that "[s]hould Defendants formally stipulate that the written agreements are valid and binding agreements according to their terms, RehabCare will agree to dismiss its claims for unjust enrichment and promissory estoppel against the Facility Defendants without prejudice" (Pl.'s Resp. at 8). In their reply, defendants state that "there is no question that express written contracts exist" between RehabCare and the Facility defendants (doc. # 27: Defs.' Reply at 2). Indeed, in their amended answer to plaintiff's complaint, the Facility defendants admit that they entered into written

9

agreements with plaintiff regarding RehabCare's provision of services at their locations (Ans., at ¶ 12). *See Keely*, 814 F.3d at 886 n.2 ("We may take judicial notice of public records, including public court documents, in ruling on a motion to dismiss under Rule 12(b)(6)"). This admission in the answer provides a sufficient basis to dismiss the claims of promissory estoppel and unjust enrichment against the Facility defendants.

Promissory estoppel provides a plaintiff with the means to enforce promises in the absence of a contract. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 526 (Ill. 2009). "Thus, a party will generally be barred from seeking redress under the doctrine of promissory estoppel where the performance which is said to satisfy the requirement of detrimental reliance is the same performance which supplies the consideration for a contract." *Saletech, LLC v. E. Balt, Inc.*, 20 N.E.3d 796, 807 (Ill. App. 2014) (internal citations and quotations omitted). Likewise, in Illinois "recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). This is because unjust enrichment is an "equitable remedy based upon a contract implied in law," and "[i]f an express contract exists to govern the parties' conduct, then there is no room for an implied contract." *Id.* (citing *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. 2004)).

"Of course, a party may plead claims in the alternative . . . [b]ut the inconsistent-pleading option in this context is limited." *Cohen*, 735 F.3d at 615 (internal citations and quotations omitted). A plaintiff may allege that the defendant breached an express contract in one count, and allege in the alternative, that if there is not an express contract, then the defendant is liable under the theories of unjust enrichment or promissory estoppel. *Id.* However, a plaintiff may not allege that the defendant breached an express contract that indisputably existed, but that in the

absence of breach of that contract, the defendant is liable for unjust enrichment or promissory estoppel. This would "misconstrue the doctrine of pleading in the alternative. Under that doctrine, a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative. Once a valid contract is found to exist, quasi-contractual relief is no longer available." *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003).

Here, RehabCare does not suggest in its complaint an alternative situation where the express contracts between the Facility defendants and RehabCare were invalid or did not exist. Rather, RehabCare alleges throughout its complaint that it has valid and enforceable agreements with the Facility defendants, and the Facility defendants admit this is so in their answer to the complaint. Thus, we grant defendants' motion to dismiss RehabCare's claims against the Facility defendants for unjust enrichment and promissory estoppel.

### 2.

Defendants also seek to dismiss RehabCare's claims of promissory estoppel and unjust enrichment against TM (Defs.' Mot. at 7). Although RehabCare and TM are not parties to any contract at issue in this case, defendants contend that RehabCare's allegations against TM fail to satisfy the federal pleading standards.

In order to maintain an action for promissory estoppel under Illinois law, a plaintiff must allege that "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Newton*, 906 N.E.2d at 523-24. RehabCare generally alleges that "Defendants made promises to RehabCare for the purpose of inducing it to continue to provide services to Defendants," and "RehabCare reasonably relied upon such promises made

by Defendants" (Compl., at ¶¶ 37-38). In addition, RehabCare alleges that "[d]uring conferences between RehabCare and Defendants, Defendants represented to RehabCare that the outstanding invoices would be paid and requested that RehabCare continue to provide services (*Id.*, at ¶17). These allegations directed to all defendants do not sufficiently plead that TM made an unambiguous promise to RehabCare to pay any debts of the Facility defendants upon which RehabCare relied.

In general, "[a] complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). An allegation that "defendants" committed some act, "without any details about who did what . . . is inadequate" under *Iqbal* and *Twombly*, and "does not propound a plausible contention that a particular person did anything wrong." *Id.* RehabCare's allegations that "Defendants" made promises, representations and requests does not give sufficient notice of the basis for RehabCare's promissory estoppel claim against TM. Because these allegations fail to allege what unambiguous promises or representations TM made to plaintiff, the claim of promissory estoppel against TM fails. *See, e.g., Bolden v. General Accident, Fire & Life Assurance Corp*, 456 N.E.2d 306, 309 (Ill. App. 1983) (holding that only the promisee may proceed on a promissory estoppel theory); *Carpenter v. Sirva Relocation, LLC*, No. 11 C 7623, 2013 WL 6454253, at *9 (N.D. Ill. Dec. 9, 2013) (same); *Bryant v. Jackson Nat. Life Distributors, LLC*, No. 12 C 9391, 2013 WL 1819927, at *4 (N.D. Ill. Apr. 30, 2013) (same).

RehabCare's collective pleading is equally problematic in the unjust enrichment count against TM. RehabCare collectively alleges that "Defendants have knowingly and willingly received, or will receive, reimbursement by Medicare, directly or indirectly, for services provided by RehabCare, and have wrongfully and intentionally withheld or will withhold such

12

amounts from RehabCare" (Compl., at ¶ 44). Further, RehabCare states that "Defendants . . . have directly or indirectly benefitted from such reimbursement" (*Id.*, at ¶ 23).

While the existence of express contracts between the Facility defendants and RehabCare precluded RehabCare's allegations of unjust enrichment against them, it does not follow that the absence of such contracts between RehabCare and TM leads to the existence of a quasi-contractual unjust enrichment claim against TM. RehabCare does not make any allegations that would support a claim that TM was essentially an alter ego of the Facility defendants that would justify inferring that TM had a contractual or quasi-contractual relationship with RehabCare. Thus, to state a cause of action based on a theory of unjust enrichment against TM, RehabCare must have alleged that TM "has unjustly retained a benefit to the plaintiff's detriment, and that [TM's] retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI*, 545 N.E.2d at 679. In this case, however, RehabCare does not allege what benefit TM unjustly retained. Equally conclusory is the allegation that TM caused the Facility defendants "to breach the Therapy Services Agreements and divert funds owed RehabCare solely for TM's gain or to harm RehabCare" (Compl., at ¶ 24). These are the "magic words" that RehabCare used -- unsuccessfully, as we explained above -- to allege a tortious interference claim against TM. They are also not sufficient to sustain an unjust enrichment claim against TM.

*First*, the allegation that funds were diverted "solely for TM's gain" on its face appears to contradict the allegation that defendants collectively received a benefit. *Second*, RehabCare has not alleged what "gain" TM received. It is axiomatic that Medicare reimburses nursing facilities and hospitals -- not their management companies -- for providing services. *See* 42 U.S.C. § 1395g (Medicare Act, Part A, "Payments to providers of services"). It is not evident from the complaint how TM, the company that managed the nursing facilities in this case, would have

benefitted from Medicare reimbursements. "Generally, to be entitled to the remedy of unjust enrichment in a quasi-contract action, a plaintiff must show that he or she furnished valuable services or materials and that the defendant received them under circumstances that would make it unjust to retain the benefit." *C. Szabo Contracting, Inc. v. Lorig Const. Co.*, 19 N.E.3d 638, 644-45 (Ill. App. 2014). However, RehabCare does not allege that it provided any services to TM (as opposed to the Facility defendants). Thus, RehabCare's allegations are insufficient to sustain the unjust enrichment claim against TM under *Iqbal* and *Twombly*. See *Knight*, 725 F.3d at 818.

### C.

Defendants also contend that Count V of the complaint, alleging account stated, should be dismissed. As explained above, RehabCare has voluntarily dismissed this claim as to TM; however, RehabCare argues that it has sufficiently stated this claim as to the Facility defendants (Pl.'s Resp. at 7). RehabCare asserts that it "delivered invoices for services rendered by RehabCare to the Defendants," but that "Defendants, without justification, excuse or dispute of such invoices, have not paid RehabCare any part of the amount invoiced and have acquiesced to the accuracy of the account by failing to timely object" (Compl., at ¶¶ 51-52). With this claim, as with the ones listed above, RehabCare engages in improper collective pleading which alone requires dismissal. However, even if RehabCare had pleaded this claim against each Facility defendant individually, RehabCare's complaint would fail to state a claim for account stated.

Under Illinois law, "[a]n account stated is an agreement between the parties who previously engaged in transactions that the account representing those transactions is true and the balance stated is correct, together with a promise for payment of the balance." *U.S. Neurosurgical, Inc. v. City of Chicago*, 572 F.3d 325, 333 (7th Cir. 2009) (quoting *Dreyer*

14

*Medical Clinic, S.C. v. Corral*, 591 N.E.2d 111, 114 (Ill. App. 1992)). "When a statement of account is rendered by one party to another and is retained by the latter beyond a reasonable time without objection, that statement constitutes an acknowledgment and recognition by the latter of the correctness of the account, together with a promise, express or implied, for the payment of such balance, and establishes an account stated." *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1137-38 (7th Cir. 2009). "In this manner, the debtor and creditor have a meeting of the minds as to the accuracy of the account and have manifested their mutual assent to the agreement. . . . The manner of acquiescence is not critical, and the meeting of the minds may be inferred from the parties' conduct and the circumstances of the case." *Id.* at 1138 (internal citations omitted).

Further, the Illinois Supreme Court has explained that "an account stated cannot be created merely by furnishing an account unless the creditor or debtor specifically intends to establish a balance due or to agree upon a final settlement to date between the parties. That is, an account stated is merely a final determination of the amount of an existing debt, and an action for an account stated is founded upon a promise to pay that debt, not the original promise to pay under the contract." *Patrick Eng'g, Inc. v. City of Naperville*, 976 N.E.2d 318, 336-37 (Ill. 2012) (internal citations and quotations omitted).

In *Patrick*, the Illinois Supreme Court held that the plaintiff did not adequately allege a claim for account stated. *Patrick*, 976 N.E.2d at 336-37. The Illinois Supreme Court explained that the final invoice that the plaintiff sent to the defendant did not provide the defendant with a final statement of account, indicating the total amount that the defendant owed. *Id.* Thus, the *Patrick* Court held, the complaint "does not, and cannot, allege that the [defendant] promised to pay that amount." *Id.*

In this case, RehabCare's complaint is devoid of any allegations as to the total amount each of the Facility defendants owe RehabCare. In fact, RehabCare does not plead the contents of any of the invoices nor the dates RehabCare allegedly sent them to the Facility defendants. While RehabCare may not be required to attach invoices to its complaint showing the amounts due, *see YES Lifts, LLC v. Normal Indus. Materials, Inc.*, No. 10 C 4828, 2011 WL 1770458, at *6 (N.D. Ill. May 9, 2011), in the absence of any invoices, statements of account, the Agreements and the Notes, RehabCare's allegations are wholly inadequate to state a plausible claim for account stated; *i.e.*, a claim that there was an agreement between the Facility defendants and RehabCare that "the account representing those transactions is true and that the balance stated is correct." *Patrick*, 976 N.E.2d at 336.

Nor does RehabCare's complaint sufficiently plead that the Facility defendants silently acquiesced to whatever balance was stated in RehabCare's invoices. As explained above, "[w]hen a statement of account is rendered by one party to another and is retained by the latter beyond a reasonable time without objection," acquiescence to the balance stated may be implied. *Delta*, 554 F.3d at 1137-38. Here, however, RehabCare does not adequately allege that the Facility defendants accepted the invoices without objection. To be sure, RehabCare once again uses the magic words to "recit[e] . . . the elements of a cause of action" for account stated. *Zahn*, 815 F.3d at 1087. RehabCare pleads that "[t]he Defendants, without justification, excuse or dispute of such invoices, have not paid RehabCare any part of the amount invoiced and have acquiesced to the accuracy of the account by failing to timely object" (Compl., at ¶ 52). However, this allegation is not enough to plead that defendants acquiesced to an account stated, because RehabCare also pleads that the "Facility Defendants have failed and refused to pay for services provided by RehabCare" (*Id.*, at ¶ 15). As the Illinois Supreme Court explained in

*Patrick*, there is no acquiescence to an account stated where the plaintiff alleges that the defendants "failed and refused to pay" for the plaintiff's services. *Patrick*, 976 N.E.2d at 337. Thus, RehabCare fails to state a claim for account stated.

## CONCLUSION

In light of the foregoing, we grant defendants' motion to dismiss Counts III, IV, V and VI of RehabCare's complaint without prejudice (doc. # 16).

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: May 4, 2016**